**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DELOIS EDMONDSON,** | : | |
| **Plaintiff,** | : | |
| v. | : | |
| **JOHN E. POTTER,** | : | **Civil No.: WDQ-02-2803** |
| **POSTMASTER GENERAL,** | | |
| **U.S. POSTAL SERVICE,** | : | |
| **Defendant.** | : | |

...oOo...

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

John E. Potter, Postmaster General of the United States Postal Service, defendant herein, by his attorneys, Thomas M. DiBiagio, United States Attorney for the District of Maryland, and John W. Sippel, Jr., Assistant United States Attorney for said District, hereby submits this Memorandum in Support of his Motion to Dismiss or, in the alternative, for Summary Judgment.

## I.    <u>INTRODUCTION</u>

This action is brought by Delois Edmondson against her employer, the United States Postal Service, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16 *et seq*., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 *et seq*.  In her Amended Complaint, Plaintiff alleges that Defendant discriminated against her based upon her race, color, sex

and disability.[1]  Plaintiff also asserts claims for hostile work environment and retaliation.  Plaintiff

seeks, among other things, back pay, front-pay, compensatory damages and attorneys' fees.

As discussed more fully below, Plaintiff's Amended Complaint must be dismissed because

her claims were filed untimely.  Even if the Court accepts all of Plaintiff's claims, Plaintiff cannot

establish a *prima facie* case of discrimination under Title VII or the Rehabilitation Act, nor can she

establish her claims of hostile work environment and retaliation.  For these reasons, Plaintiff's

Amended Complaint must be dismissed or, in the alternative, judgment entered in favor of

Defendant.

## II.   STATEMENT OF FACTS

Delois Edmondson ("Plaintiff"), a 50 year old African-American woman, joined the United

States Postal Service ("Defendant" or "USPS") as a regular employee, mail processing clerk on

January 19, 1974.  *See* PS Form 50, attached hereto as Exhibit 1; Deposition of Delois Edmondson,

p. 6, attached hereto as Exhibit 2..  At all relevant times, Plaintiff was assigned to work as a grade

level PS-05, at the 030 Manual Operation section of the USPS Baltimore Processing and

Distribution Center located at 900 E. Fayette Street, Baltimore, Maryland.  Ex. 1; Ex. 2, pp. 18-19.

In 1986, Plaintiff developed carpal tunnel syndrome in her wrist after working at a Letter

Sorting Machine for a period of years.  *Id*.  Thereafter, she was placed on limited duty assignments

in the 030 section where she sorted mail manually.  *Id*.  Plaintiff's regular work schedule during this

time-frame was on Tour 1, from 1550 hours until 2400 hours.  *See* Report of Investigation ("ROI"),

---

[1]  Plaintiff has voluntarily dismissed her claims of discrimination and retaliation based on her color and sex.  *See* August 8, 2003 Stipulation.

p. 5, attached hereto as Exhibit 3.

In December, 1997, Plaintiff requested that management approve temporary adjustments to her work schedule so as to allow her to begin and end her tour approximately 3 hours later, from 1900 hours until 0350 hours. *Id.*, pp. 27-34. The USPS procedure for requesting a temporary schedule change requires the submission of a PS Form 3189[2] by the employee and requesting the change to their supervisor and the Manager of Distribution Operations ("MDO"), as well as a sign-off by a union official. *See* Ex. 3, pp. 44, 46. Approvals for temporary schedule changes apply for 30-day periods of time or less, and are allowed if management determines that the changes will not adversely impact postal operations. *Id.*, pp. 6, 43-44; Deposition of Vincent Jackson, pp. 70-72, attached hereto as Exhibit 4. In January, 1999, approval of temporary schedule changes was also required by the installation head, who at that time, was Senior Plant Manager Gregory Incontro. *See* Deposition of Gregory Incontro, p. 24, attached hereto as Exhibit 5.

Beginning in December, 1997, and thereafter, Plaintiff requested temporary schedule changes in order to provide a more convenient schedule for her baby-sitter, as well as to allow her to take care of her disabled brother. Ex. 2, pp. 127-128. From December 29, 1997, through December 19, 1998, Plaintiff requested and was approved for 13 temporary schedule changes during this 12-month period. *See* Ex. 3, pp. 5, 27-34. The requests were granted by MDO Vince Jackson. *Id.*

In 1998, the Operations division decided that the reporting times for the employees on the

---

[2]   The PS Form 3189 is entitled "Request for Temporary Schedule Change for Personal Convenience." *See* Ex. 3, p. 45.

030/040 Manual Operation would be changed to meet service needs.  *See* Ex. 1, pp. 4, 26.  The new reporting times affected all employees on the 030/040 Manual Operation.  *Id*.

In January, 1999, Plaintiff submitted two requests for schedule changes.   First, Plaintiff submitted a PS Form 3189 to request a temporary schedule change for the period of January 18, 1999, through February 18, 1999.  Ex. 3, p. 15.  This request was denied by MDO Jackson.  *Id*. Next, on January 3, 1999, Plaintiff submitted a letter to Senior Plaint Manager Gregory Incontro and requested a schedule change for an entire one-year period from January, 1999, through January, 2000.  *See* Ex. 3, p. 12.  This temporary schedule change was not submitted on a PS Form 3189, and the request did not contain the signatures of Plaintiff's MDO or a union representative, as required by USPS policy and procedures.  *Id*.  Senior Plant Manager Incontro denied Plaintiff's schedule change request.   Ex. 2, p. 131.

Thereafter, Plaintiff sought EEO counseling and filed a formal EEO Complaint.  *See* Ex. 3, pp. 56-60; 53-55.  Plaintiff's case was dismissed with prejudice on June 28, 2001, and she was given notice of her right to sue in a United States district court.  *See* EEOC Order of Dismissal, attached hereto as Exhibit 6.

### III.  <u>LEGAL STANDARDS</u>

#### A.  <u>Motion to Dismiss</u>

It is well-established that a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted where it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  The court

scrutinizes the legal sufficiency of the complaint, not the supporting facts. *See Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship.,* 213 F.3d 175, 180 (4th Cir. 2000). Because the examination is limited in this way, a court must accept all well-pleaded allegations and should review the complaint in a light most favorable to the plaintiff. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). This does not mean, however, that a court must accept "the legal conclusions drawn from the facts ... [or] unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc.,* 213 F.3d at 180.

In addition, dismissal for failure to act timely, such as dismissal for expiration of the statute of limitations, is raised properly by a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277 (1990). *See also Pantry Pride Enters., Inc. v. Glenlo Corp.*, 729 F.2d 963, 965 (4th Cir. 1995). Accordingly, the Court must dismiss Plaintiff's Amended Complaint if it is unsupported by specific factual allegations sufficient to support a viable claim or if Plaintiff failed to file her action timely.

**B.    <u>Summary judgment</u>**

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has emphasized that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Trial courts should enter summary judgment "against any party who fails to make a showing

5

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.  Where the plaintiff fails to meet this burden, "a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial."  *Hayes v. Hambruch*, 841 F. Supp. 706, 708 (D. Md. 1994) (Harvey, J.), *aff'd,* 64 F.3d 657 (4th Cir. 1995).  The Fourth Circuit has emphasized that trial judges have an "affirmative obligation. . .to prevent factually unsupported claims and defenses from proceeding to trial."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).  If the opponent of a summary judgment does not have a reasonable prospect of prevailing the parties should not be subjected to the time and expense of trial.  *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).

The statutory purpose of summary judgment applies no less to discrimination cases than to commercial or other areas of litigation.  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  If the opponent of a summary judgment does not have a reasonable prospect of prevailing before a jury the parties should not be subjected to the time and expense of trial.  *Palucki,* 879 F. 2d at 1572.  A subjective, albeit genuine, belief of discrimination will not, in the employment discrimination context, shield a non-moving plaintiff from a grant of summary judgment.  *Goldberg v. B. Green and Co., Inc.,* 836 F.2d 845, 848 (4th Cir. 1988); *see also Ennis v. National Association of Businesses and Educational Radio, Inc.,* 53 F.3d 55, 61 (4th Cir. 1995) (plaintiff may not impute discriminatory motive without factual support).

# IV.    ARGUMENT

**A.    Plaintiff's Amended Complaint must be dismissed because she failed to file her claims timely.**

Under Title VII, a complainant must file her civil action in an appropriate United States district court within 90 days of receipt of the final action on a complaint filed at the administrative level.  29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1614.407(a.).  *See also Watts-Means v. Prince George's Family Crisis Center,* 7 F.3d 40, 42 (4th Cir. 1993).  If a plaintiff fails to file a civil action within 90 days of receipt of the final action, the complaint must be dismissed.  *Watts-Means*, 7 F.3d at 42.

In this case, Plaintiff received her "right to sue" notification on June 28, 2001.  Amended Complaint, ¶ 3; June 28, 2001 Order of Dismissal, attached hereto as Exhibit 6.  Plaintiff filed her first Complaint for employment discrimination (Civil Action No.: 01-2887) with this Court on September 27, 2001.[3]  *See* September 27, 2001 Complaint for Employment Discrimination, attached hereto as Exhibit 7.  The Court dismissed Plaintiff's Complaint for her failure to perfect proper service of process.  *See* February 20, 2002 Order of the United States District Court for the District of Maryland, attached hereto as Exhibit 8.  Plaintiff appealed the Court's Order to the Fourth Circuit, and the Fourth Circuit dismissed the appeal, stating that "[b]ecause [Plaintiff] may refile this action and perfect service of process, her appeal is interlocutory in nature and not subject to appellate review...."  *See* July 23, 2002 Opinion (unpublished) from the United States Court of Appeals for

---

[3]  Plaintiff failed to file her first civil action (Civil Action No. 01-2887) in a timely manner.  Plaintiff received her "right to sue" notice on June 28, 2001, and she filed her first complaint on September 27, 2001 - 91 days after she received her "right to sue" notice.

the Fourth Circuit, attached hereto as Exhibit 9. Thereafter, Plaintiff filed her current action on August 22, 2002.

Plaintiff's Complaint in the present action is untimely, as she failed to file her Complaint within 90 days of receiving her notice of final action from the EEOC. Plaintiff received notice of the final action on June 28, 2001, and Plaintiff did not initiate this case until August 22, 2002 - well over one year later. In its decision concerning the dismissal of Plaintiff's previous action (Civil Action No. 01-2887), the Fourth Circuit did not state that the statute of limitations would be tolled or waived as a result of her action being dismissed. During her deposition, Plaintiff indicated that she was aware of the statute of limitations. *See* Ex. 2., p. 64. Despite that Plaintiff was aware of the statute of limitations and was represented by counsel, Plaintiff failed to file her Complaint and provide notice of her action within 90 days after receiving the "right to sue" notice. Accordingly, her Amended Complaint must be dismissed.

In addition, under Fed. R. Civ. P. 15, her second Complaint does not "relate back" to her initial Complaint because her second action is a "new" action and not an amendment or supplement to her first action (Civil Action No.: 01-2887). The USPS never received notice of her first action within the 90-day limitations period and, therefore, Plaintiff's current action must be dismissed. *See, e.g., Gardner v. Gartman*, 880 F.2d 797, 799 (4th Cir.1989)(an originally named party must be given notice of the suit within the limitations period for that parties' later joinder to relate back to the original filing date of the complaint).

8

**B.    Plaintiff cannot prove her claims of disability and race discrimination, hostile work environment or retaliation.**

A plaintiff can prove a case of discrimination with direct evidence; if the plaintiff has no direct evidence of discrimination, however, a court must apply the three-part proof scheme outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As outlined in *McDonnell Douglas*, first, the plaintiff must demonstrate a *prima facie* case of discrimination. Second, if the *prima facie* case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate, non-discriminatory reasons for the adverse employment actions. *McDonnell*, 411 U.S. at 802. Third, if the employer makes this showing, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons for the adverse employment action are pretextual. *McDonnell*, 411 U.S. at 804; *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989).

Under some circumstances, a plaintiff's *prima facie* case, combined with sufficient evidence that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-148 (2000). Even if the plaintiff demonstrates a *prima facie* case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if there is evidence that precludes a finding of discrimination; that is if "no rational fact finder could conclude that the action was discriminatory." *Id.*; *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000). If a plaintiff cannot state a *prima facie* case and cannot prove that the employer's proffered legitimate non-discriminatory reasons are pretextual, then she cannot prevail and summary judgment must be

granted for the defendant.

Plaintiff has failed to present any direct evidence of discrimination and, therefore, the *McDonnell Douglas* framework applies to Plaintiff's claims.

### 1. Plaintiff cannot establish that she is an "individual with a disability" under the Rehabilitation Act, nor can she show that the USPS failed to provide her with reasonable accommodation.

In her Amended Complaint, Plaintiff alleges that the USPS failed to provide her with reasonable accommodation under the ADA, the Rehabilitation Act, and under Maryland law.[4]  *See* Amended Complaint, ¶ 29.  Plaintiff cannot, however, establish a *prima facie* case of discrimination based on her disability under the Rehabilitation Act.

The standards used to determine whether an employer has discriminated under the Rehabilitation Act are the standards applied under the ADA.  *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).  Thus, the general rule is that no covered entity shall discriminate against a qualified individual with a disability because of the disability.  *See* 42 U.S.C. § 12112(a); *Hooven-Lewis*, 249 F.3d at 268.  Discrimination includes failing to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.  *See* 42 U.S.C. § 12112(b)(5)(A).

Before determining whether an employer's actions qualify as discrimination, a plaintiff must first demonstrate that he or she is an individual with a disability under the Rehabilitation Act.  An

---

[4] The ADA is not applicable to federal employees.  *See Bryant v. Better Business Bureau of Greater Maryland*, 923 F. Supp. 720, 733 (D. Md. 1996)(Davis, J.).  As stated above, Plaintiff has voluntarily agreed to dismiss her state law claims, as they are not proper in this case.  Thus, Plaintiff's disability discrimination claim falls under the Rehabilitation Act only.

"individual with a disability" is defined as one who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;
> (ii) has a record of such an impairment; or
> (iii) is regarded as having such an impairment.

29 U.S.C. § 705(20)(B); 29 C.F.R. § 1614.203(a)(1). To qualify under the Rehabilitation Act as a protected disability that substantially limits a major life activity, the impairment must limit functions "such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3). If a plaintiff can prove that he or she is an "otherwise qualified individual with a disability," then the plaintiff must show that if a reasonable accommodation is necessary, that the denial of the accommodation was made in a discriminatory fashion. *Bryant*, 923 F. Supp. at 733 (citations omitted).

In this case, Plaintiff cannot demonstrate to this Court that she was a "qualified individual with a disability," as she cannot show that her disability substantially limits a major life activity. Plaintiff alleges that she is disabled because she has carpal tunnel syndrome ("CTS"). *See* Amended Complaint, ¶ 9. During her deposition, however, Plaintiff testified that she could take care of herself, drive a car, brush her teeth, bathe herself, do laundry, cook simple meals, dress herself, fix her hair, and sew. Ex. 2, pp. 72-74. Plaintiff stated that her only limitations were that she "couldn't do a lot of heavy lifting," and has decreased grip and strength in her right hand. *Id*.

Moreover, Plaintiff began her employment a mail processing clerk with the USPS in 1974, and has worked for the USPS in various capacities from 1974 to the present, with only brief breaks in service. *See* Ex. 1; Ex. 2, p. 17-31. Based on her testimony, Plaintiff cannot show that her

11

medical condition, i.e. CTS, substantially limited one or more of her major life activities.

In addition, the USPS did not regard Plaintiff as having an impairment.  The Fourth Circuit

has concluded that

> an employer does not necessarily regard an employee as [disabled] simply by finding
> the employee to be incapable of satisfying the singular demands of a particular
> job....The statutory reference to a substantial limitation indicates instead that an
> employer regards an employee as handicapped in his or her ability to work by
> finding the employee's impairment to foreclose generally the type of employment
> involved.

*Forrisi v. Bowen*, 794 F.2d 931, 934-35 (4th Cir. 1986).  *See also Jasany v. United States*, 755 F.2d

1244, 1250 (6th Cir. 1985)("an impairment that interfered with an individual's ability to do a

particular job, but did not significantly decrease that individual's ability to obtain satisfactory

employment otherwise, was not *substantially* limiting within the meaning of the

[Rehabilitation Act].")(emphasis in original).

Because the USPS continued to employ Plaintiff and found her capable of working limited

duty in the 0030 Manual Operation at the USPS Baltimore Processing and Distribution Center, the

USPS did not regard Plaintiff as having a disability that substantially limited a major life function.

In her EEO Investigative Affidavit, Plaintiff stated that "[m]y disability makes me limited in the jobs

I am able to do, but it does not interfere with my ability to do the jobs in the area that I am assigned

to." Ex. 3, p. 8.  Thus, Plaintiff, through her own admission, must agree that the USPS did not

regard her as a having a disability that substantially limits a life function.  Because Plaintiff cannot

establish that she is an "individual with a disability" as defined by the Rehabilitation Act, nor can

she show that the USPS regarded her as a person with a disability, her claims under the

Rehabilitation Act must be dismissed or, in the alternative, judgment entered in favor of the USPS.

Even if Plaintiff could establish that she is an "individual with a disability" as defined by the Rehabilitation Act, Plaintiff cannot establish that the USPS failed to accommodate her, or that her alleged denial of an accommodation was made in a discriminatory fashion. In this case, the record is replete with facts showing that the USPS provided Plaintiff with reasonable accommodation as a result of her CTS. *See, e.g.*, Ex. 2, pp. 13-31; Ex. 3; pp. 3-4. From the time that Plaintiff presented her medical documentation to the USPS relating to her CTS in 1986, the USPS provided Plaintiff with work that she could perform. *Id*. Indeed, Plaintiff worked, and continues to work, as a mail processing clerk in the 030 Manual Operation at the Baltimore Processing and Distribution Center. Ex. 1; Ex. 3, pp. 3-4.

Plaintiff claims, however, that the USPS failed to provide her with reasonable accommodation when her supervisors denied her requests for schedule change in January 1999. The requests for schedule change, however, were not to accommodate Plaintiff's medical condition or alleged disability; rather, her requests for schedule change were for personal reasons, i.e., to accommodate her baby-sitter and to care for her sick brother. Ex. 2, pp. 126-128; Ex. 3, p.4; 25-26; Ex. 4, pp. 31-33. Because her requests for schedule change were for personal convenience and not to accommodate her alleged disability, she cannot prove that the USPS failed to provide reasonable accommodation for her alleged disability.

In addition, the USPS had non-discriminatory reasons for denying her requests for schedule change. Plaintiff's requests for schedule change were denied because of their impact on the service in the 030 Manual Operation. Ex. 3, pp. 4; 25-26; Ex. 4; pp. 31-33. In addition, her request for a

12-month schedule change was denied because she failed to follow USPS policy and procedures for requesting such a change. Specifically, she did not complete a PS 3189 form, nor did she receive authorization from her MDO or union representative. Ex. 3, pp. 3-4, 12 and 13. Moreover, schedule change requests were for temporary changes only, i.e. 30 days or less, and Plaintiff's request was for a 12 month period. Ex. 3, p. 12; Ex. 4, p. 35. Because Plaintiff cannot show that the USPS failed to provide Plaintiff with a reasonable accommodation based on her disability, or that the denial of the requested accommodation was made in a discriminatory fashion, her claims must be dismissed or, in the alternative, judgment entered in favor of Defendant.

2.    **Plaintiff cannot establish a *prima facie* case of disability discrimination.**

To establish a *prima facie* case of disability discrimination under the Rehabilitation Act, Plaintiff must show that she: (1) has a disability; (2) was otherwise qualified for the job; and (3) experienced an adverse employment action because of her disability. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997). Plaintiff cannot establish a *prima facie* case of disability discrimination because Plaintiff cannot show that she is disabled under the Rehabilitation Act, nor can she show that she experienced an adverse employment action.

As argued more fully above, Plaintiff is not an "individual with a disability" under the Rehabilitation Act. In addition, Plaintiff cannot show that she experienced an adverse employment action. "An absolute precondition to [any discrimination] suit [is] that some adverse employment action [has] occurred." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). An adverse employment action is "characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating ... [but not] ... interlocutory or mediate

14

decisions having no immediate effect upon employment conditions." *Page v. Bolger*, 645 F.2d 227, 230-233 (4th Cir. 1981). "[W]ithout evidence that the terms, conditions, or benefits of [a plaintiff's] employment were adversely affected," there is no adverse employment action. *Munday v. Waste Management of North America, Inc.*, 126 F.3d 239, 243 (4th Cir. 1997). *See also Von Gunten v. Maryland*, 243 F.3d 858, 863-866 (4th Cir. 2001); *Reinhold v. Commonwealth of Virginia*, 151 F.3d 172, 174-175 (4th Cir. 1998) (adverse action generally means "a significant change in employment status ... [which in most cases] involve[s] economic harm.").

In this case, Plaintiff alleges that she suffered an adverse employment action when her requests for schedule change were denied. *See* Complaint, ¶ 11. The denial of the requests for schedule change, however, did not affect a term, condition or benefit of Plaintiff's employment. Indeed, Plaintiff indicated that the denial of the requests for schedule change did not cause her to be demoted or cause her to receive less pay or benefits. Ex. 2, pp. 125-126; Ex. 4, pp. 73-74; Ex. 5, p. 40. Plaintiff also admitted that the requests for schedule change were for her personal convenience, i.e. to change her hours so that she could accommodate her baby-sitter and care for her brother. *Id.*, p. 127. Despite her assertions and beliefs to the contrary, the denial of Plaintiff's requests for schedule change were not adverse employment actions. *See, e.g., Bunis v. Runyon*, 1997 WL 639241, *3-4 (S.D.N.Y. Oct. 16, 1997)(plaintiff's subjective feelings about denial of shift-change request not enough to transform denial into adverse employment action within meaning of Title VII). Because the denial of her requests for schedule change was not an adverse employment action, Plaintiff cannot establish a *prima facie* case of disability discrimination and her claim must be dismissed or, in the alternative, judgment entered in favor of the USPS.

15

Following the *McDonnell Douglas* framework, even if Plaintiff could establish a *prima facie* case of disability discrimination, the USPS provided legitimate, non-discriminatory reasons for denying Plaintiff's requests for schedule change.   Schedule changes were approved for personal convenience, and would be denied if the supervisor believed the change would affect the floor's operations. Ex. 4, pp. 31-33. MDO Jackson,  who denied one of Plaintiff's requests for schedule change, stated that Plaintiff's requests for schedule change were denied because of the impact such a change would have on her shift's operations and moving the mail.  *Id*.  In addition, Plaintiff failed to follow proper USPS procedures when she request the 12-month schedule change, and her request was not temporary in nature.  Ex. 3; p. 4, 6 and 43-44.  Because the USPS provided legitimate non-discriminatory reasons for denying Plaintiff's requests for schedule change, and Plaintiff cannot prove that those reasons were pretextual, Plaintiff's claim of disability discrimination must be dismissed or, in the alternative, judgement entered in favor of Defendant.

### 3.     Plaintiff cannot prevail on her race discrimination claim.

To prevail on her race discrimination claim, Plaintiff must prove that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment action; (3) at the time of the adverse employment action, she was performing at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances that raise an inference of unlawful discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505 (1993)(citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-55 (1981)).  Plaintiff cannot prevail on her claim for race discrimination because she cannot prove several of the essential elements to support her claim.

16

The USPS concedes that Plaintiff is a member of a protected class. As explained more fully above, however, Plaintiff cannot prove that she was subjected to an adverse employment action. The denial of the requests for schedule change did not affect the terms, conditions or benefits of her employment and, therefore, was not adverse employment action.

In addition, Plaintiff cannot show that the alleged adverse employment action was based on her race, or was occurred under circumstances that raise an inference of discrimination. As argued above, the USPS had legitimate, non-discriminatory reasons for not granting her requests for schedule change, and Plaintiff cannot prove that these reasons were a pretext to discrimination. Accordingly, Plaintiff cannot prevail on her claim for race discrimination and her claim must be dismissed or, in the alternative, judgment entered in favor of Defendant.

**4.      Plaintiff's claim of hostile work environment is not supported by the evidence.**

To state a claim for hostile work environment under the Rehabilitation Act and/or based on her race, Plaintiff must show that: (1) the harassment was unwelcome; (2) the harassment was based on her disability and/or her race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create ant abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001)(disability); *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998)(race).

If the Court accepts that Plaintiff does not have a disability as defined by the Rehabilitation Act, then Plaintiff's claim for hostile work environment under the Rehabilitation Act fails as a matter of law. *See Jones v. Department of Labor*, 2002 WL 58220, *1 (D. Md. Jan. 16, 2002)(Smalkin, J.). Nevertheless, even if the Court finds that Plaintiff has a disability as defined

by the Rehabilitation Act, Plaintiff cannot show that the alleged harassment was based on her disability and/or her race, or that the harassment was sufficiently severe or pervasive.

During her deposition, Plaintiff provided a list of events that allegedly occurred in her workplace that she characterized as harassment and perpetuated a hostile work environment. For example, Plaintiff stated that she would sometimes arrive at work and she would not have a chair to sit in. Ex. 2, p. 77. Plaintiff also alleged that she would be marked late if she was as little as a minute and a half late. *Id.*, pp. 77-79. Plaintiff complained that the workplace was too cold. *Id.*, pp. 80-81. She complained that one night she was asked to work in a mail-handler position, and then was removed from that job. *Id.*, p. 84. Plaintiff alleges that on one occasion the USPS tried to charge her for 30 minutes of time because she forgot to clock out for lunch. Ex. 2, pp. 85-86. She claims that after she would take leave so that she could tend to her daughter, someone would bring her a leave slip two months after she had taken leave. *Id.*, pp. 87-88. Last, Plaintiff alleges that sometimes her "badge" would be missing. *Id.*, p. 90.

Plaintiff cannot show that these alleged occurrences, however, were based on her disability and/or her race. Indeed, when Plaintiff was asked at her deposition how the alleged actions were based on her disability and race, Plaintiff was unable to provide any evidence to show that her disability and/or her race were factors in the above-listed occurrences. Plaintiff's MDO and Senior Plant Manager were not aware of any harassment that Plaintiff alleges she was subjected to and they do not believe that Plaintiff was discriminated against in any fashion. Ex. 4, pp. 74-75; Ex. 5, pp. 40-41.

Moreover, the alleged occurrences were not sufficiently severe or pervasive to create a

hostile work environment.  Indeed, Plaintiff described the occurrences as "silly, stupid stuff," Ex.

2, pp. 87, 89, and a "bunch of little stuff."  *Id.*, p. 92.  Isolated or genuinely trivial acts that constitute

ordinary adversities in the workplace are not actionable.  *See Faragher v. City of Boca Raton*, 524

U.S. 775, 778 (1998).  Because Plaintiff did not consider the alleged harassment as severe and

pervasive, and the occurrences were isolated and trivial, her hostile work environment fails as a

matter of law.

For the foregoing reasons, Plaintiff is unable to satisfy her burden of showing that she was

subjected to a hostile work environment based on her disability and race, and her claim must be

dismissed or, in the alternative, judgment entered in favor of Defendant.

**5.    Plaintiff cannot establish a *prima facie* case of retaliation.**

To sustain a claim of retaliation, Plaintiff must prove, as a threshold matter, that (i) she

engaged in protected activity, such as filing an EEO complaint; (ii) the agency took adverse

employment action against her; and (iii) a causal connection existed between the protected activity

and the adverse action. *Carter v. Ball*, 33 F. 3d 450, 460 (4th Cir. 1994); *Williams*, 871 F.2d at 457;

*Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1988).  Here, Plaintiff cannot

satisfy the elements necessary to sustain her retaliation claim.

In this case, Plaintiff did engage in protected activity.  *See* Complaint, ¶ 18.  Plaintiff's

retaliation claim fails as a matter of law, however, as Plaintiff cannot show that she was subjected

to an adverse employment action.  As argued more fully above, denial of Plaintiff's requests for

schedule change was not adverse employment action.

Even if denial of the requests for schedule change was adverse employment action, Plaintiff

cannot show that the denial of her requests for schedule change was causally related to the filing of her EEO complaints. To the contrary, MDO Jackson testified that Plaintiff's requests were denied because of the impact that the change would have had on operations, and not because of any discriminatory purpose. Ex. 3, pp. 25-26; Ex. 4, pp. 31-33. Moreover, Plaintiff failed to follow the procedures for submitting one of her requests for schedule change, and her request for a 12-month schedule change was not temporary in nature. Because Plaintiff cannot establish a causal link between her protected activity and any alleged adverse employment action, Plaintiff's retaliation claim must be dismissed or, in the alternative, judgment entered in favor of the USPS.

## V.    CONCLUSION

Plaintiff failed to timely file her Complaint in this action and, therefore, her action must be dismissed. Even if the Court accepts all of Plaintiff's claims, Plaintiff cannot establish a *prima facie* case of disability discrimination or failure to provide reasonable accommodation under the Rehabilitation Act. In addition, Plaintiff failed to prove a *prima facie* case of race discrimination. Plaintiff's hostile work environment and retaliation claims also fail, as Plaintiff has not alleged facts sufficient to support her claims. For these reasons, Defendant John E. Potter, Postmaster General of the United States Postal Service, respectfully requests that Plaintiff's Amended Complaint be dismissed or, in the alternative, judgment entered in his favor.

Respectfully submitted,

Thomas M. DiBiagio
United States Attorney


By:_____/s/_____
John W. Sippel, Jr.
Assistant United States Attorney
Federal Bar No. 25484
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692
(410) 209-4807
(410) 962-2310 facsimile

Attorney for Defendant, John E. Potter,
Postmaster General of the United States
Postal Service


OF COUNSEL:

H. Alexander Manuel
United States Postal Service
Capital Metro Law Department
400 Virginia Avenue, S.W., Suite 650
Washington, D.C. 20024-2730