IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DELOIS EDMONDSON,** | : | |
|     **Plaintiff,** | : | |
| v. | | |
| | : | |
| **JOHN E. POTTER,** | : | Civil No.: WDQ-02-2803 |
|  **POSTMASTER GENERAL,** | | |
|  **U.S. POSTAL SERVICE,** | : | |
|     **Defendant.** | : | |

...oOo...

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

John E. Potter, Postmaster General of the United States Postal Service, defendant herein, by his attorneys, Thomas M. DiBiagio, United States Attorney for the District of Maryland, and John W. Sippel, Jr., Assistant United States Attorney for said District, hereby submits this Reply Memorandum in Support of his Motion to Dismiss or, in the alternative, for Summary Judgment.

### I.   INTRODUCTION

In her Opposition to Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, Plaintiff asserts that her untimely filed action before this Court should not be dismissed under the doctrine of equitable tolling. Plaintiff fails, however, to produce the requisite evidence to invoke the doctrine of equitable tolling and, therefore, her Amended Complaint must be dismissed.

Even if the Court accepts Plaintiff's claims, judgment must be entered in favor of Defendant. Plaintiff attempts to establish her claims under the Rehabilitation Act by asserting that the USPS

regarded her as an individual with a disability and failed to provide her with reasonable accommodation. As discussed more fully below, Plaintiff's claims under the Rehabilitation Act fail because she has alleged no facts[1] to support her claim, and she ignores the law that controls her claims. Plaintiff also posits that she can establish a *prima facie* case of disability discrimination. Plaintiff failed, however, to establish that (1) she is disabled or (2) that she suffered adverse employment action. Moreover, Plaintiff failed to present sufficient evidence to support her retaliation and hostile work environment claims . For these reasons, Plaintiff's Amended Complaint must be dismissed or, in the alternative, judgment entered in favor of Defendant.

## II.   ARGUMENT

**A.   Plaintiff's Amended Complaint must be dismissed because she failed to file her claims timely.**

In her Opposition to Defendant's Motion, Plaintiff asserts that the doctrine of equitable tolling prevents this Court from dismissing her case for her failure to timely present her claims. Plaintiff's attempt to invoke the doctrine of equitable tolling, however, is flawed. In defense of her actions, Plaintiff claims that she was confused and misunderstood the deadlines, was without counsel, and should be permitted to invoke the doctrine of equitable tolling. Pl.'s Opposition, pp.

---

[1] In support of her Opposition to Defendant's Motion, Plaintiff attaches an affidavit from herself and two co-workers. As addressed by separate motion, Plaintiff's affidavit must be struck because it is a "sham affidavit" that contains unsupported conclusory statements, hearsay, facts outside of Plaintiff's personal knowledge, and statements inconsistent with the testimony given by Plaintiff during her deposition. In addition, the affidavit from Plaintiffs co-workers must be struck, as the facts and statements contained therein reference events that were raised by Plaintiff in a prior EEO claim and resolved. *See* Ex. 1, pp. 34-38. In addition, the affidavit of Bernetta Pride must also be struck, because Ms. Pride was not identified by Plaintiff as a witness to the facts and claims presented in her Amended Complaint during the discovery period.

10, 12-13. Plaintiff does not, however, provide the Court with the proper legal standard to determine whether application of the doctrine of equitable tolling should be applied.

To invoke the doctrine of equitable tolling or estoppel, Plaintiff must establish that the USPS engaged in affirmative misconduct intended to mislead or deceive Plaintiff into missing the deadline. *See Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 96 (1990).

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Id*. (citations omitted). Interpreting *Irwin*, the Fourth Circuit has held that equitable tolling/estoppel requires "affirmative misconduct." *See Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992).

Here, Plaintiff has not provided any evidence to suggest that the USPS engaged in affirmative misconduct as to Plaintiff's missing the filing deadline for her actions against Defendant. During her deposition, Plaintiff stated that the administrative law judge informed her that she must file her complaint with this Court within a specific time period. *See* Def.'s Memorandum, Ex. 2, p. 64. Although she could not recall the specific number of days, Plaintiff stated that she was aware that there were deadlines. *Id*. In addition, many of the EEO documents provided to Plaintiff during the administrative process contain the filing requirements and deadlines. *See*, *e.g.*, Transmittal of Investigative File notice, attached hereto as Exhibit ("Ex.") 1.

Plaintiff cannot establish that the USPS engaged in affirmative misconduct during the time in which she filed either of her actions. She filed her first Complaint (Civil No. 01-2887) 91 days

after receiving her right-to-sue letter, and the case was dismissed after she received several warnings from the Court regarding her failure to serve Defendant with process. After the Fourth Circuit affirmed the dismissal of her first action, Plaintiff filed a new lawsuit against the USPS, making identical claims against the USPS as the first action, but with the assistance of counsel. The second action was filed 14 months after she received her right-to-sue letter. Because Plaintiff failed to file either of her actions within 90 days of receiving her right-to-sue letter, and she cannot provide any evidence of affirmative misconduct on behalf of the USPS, Plaintiff's action against the USPS must be dismissed.

**B.     Plaintiff cannot prove her claims of disability and race discrimination, hostile work environment or retaliation.**

To meet her burden of proof to establish her claims, Plaintiff "must produce direct evidence of a stated purpose to discriminate and/or circumstantial evidence of sufficient probative force to reflect a genuine issue of material fact." *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988)(citation omitted). As stated by the court, "[Plaintiff's] own naked opinion, without more, is not enough to establish a prima facie case of...discrimination." *Goldberg,* 836 F.2d at 848 (citing *Locke v. Commercial Union Ins. Co.*, 676 F.2d 205, 206 (6th Cir. 1982)(per curiam); *Kittredge v. Parker Hannifin Corp.*, 597 F. Supp. 605, 609-10 (W.D. Mich. 1984)). *See also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989)(a plaintiff's own assertions of discrimination are in and of themselves insufficient). "[C]onclusory assertions that [the defendants'] state of mind and motivation are in dispute are not enough to withstand summary judgment." *Goldberg,* 836 F.2d at 828 (citing *Zoby v. American Fidelity Co.*, 242 F.2d 76, 80 (4th Cir. 1957)). Moreover, self-

serving and/or conclusory affidavits cannot overcome summary judgment. *See, e.g., Evans v. Technologies Applications & Service* Co., 80 F.3d 954, 952 (4th Cir. 1996); *United States v. Urbanek*, 39 F.3d 1179 (Table), 1944 WL 589614 at * 4 (4th Cir. 1994).

> **1.    Plaintiff was not regarded by the USPS as having a physical or mental impairment which substantially limits one or more major life activities**.

As explained more fully in Defendant's Memorandum, before this Court determines whether the USPS's actions qualify as discrimination, Plaintiff must first demonstrate that she is an individual with a disability under the Rehabilitation Act. An "individual with a disability" is defined as one who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;
> (ii) has a record of such an impairment; or
> (iii) is regarded as having such an impairment.

29 U.S.C. § 705(20)(B); 29 C.F.R. § 1614.203(a)(1).

In her Opposition, Plaintiff elects not to challenge the USPS's assertion that she does not have a physical or mental impairment which substantially limits one or more of her major life activities; rather, Plaintiff asserts that the USPS regarded Plaintiff as having such an impairment. Pl.'s Opposition, pp. 16-18. Specifically, Plaintiff asserts that because she "was barred from performing a broad range of jobs in various classes utilizing her training and skills," the USPS regarded her as a person with a disability under the Rehabilitation Act. Pl.'s Opposition, p. 17. Plaintiff's argument, however, is fundamentally flawed.

As stated in *Forrisi v. Bowen*, 794 F.2d 931 (4th Cir. 1986), "...an employer regards an employee as handicapped in his or her ability to work by finding the employee's impairment to

foreclose generally the type of employment involved." *Forrisi*, 794 F.2d at 934-35. In addition, an employee is not "regarded as" having a disability where the employer places the employee in another position. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 271 (4th Cir. 2001) (citing *Beaver v. Delta Air Lines*, 43 F. Supp.2d 685, 693 (N.D. Tex. 1999)).

In 1974, Plaintiff began her employment with the USPS as a mail processing clerk. *See* Def.'s Memorandum, p. 2. She worked in the 030 Manual Operation section of the Fayette Street Post Office. *Id*. She worked at a Letter Sorting Machine for a number of years until she developed carpal tunnel syndrome. *Id*. Thereafter, Plaintiff was placed in the limited duty section of the 030 Manual Operations and sorted the mail manually. *Id*.

The fact that the USPS placed Plaintiff in the limited duty section in the 0030 Manual Operation at the USPS Baltimore Processing and Distribution Center means that the USPS did not regard Plaintiff as having a disability that substantially limited a major life function. Plaintiff began her employment with the USPS as a mail processing clerk, and she continues to work in the 030 Manual Operations section. Moreover, Plaintiff stated that her carpal tunnel syndrome condition "...does not interfere with my ability to do the jobs in the area that I am assigned to." *See* Def.'s Memorandum, p. 12.

In her Opposition to Defendant's Motion, Plaintiff claims that she was "barred from performing a broad range of jobs in various classes utilizing her training and skills." Pl.'s Opp., p. 17. Plaintiff's allegations, however, are unsupported by the evidence. Plaintiff has not presented any evidence, other than her own unsupported conclusions and hearsay, to support her claim. Indeed, Plaintiff has not provided this Court with any medical or other evidence to support her claim

that she is disabled as defined by the Rehabilitation Act. Without more, Plaintiff cannot establish that the USPS regarded her as a person with a disability under the Rehabilitation Act.

Because Plaintiff is able to perform the essential functions of her job (sorting mail), and she has not established that she is a person with a disability under the Rehabilitation Act or that the USPS regarded her as a person with a disability, Plaintiff's claims under the Rehabilitation Act fail as a matter of law and must be dismissed. *See Peeples v. Coastal Office Products, Inc.*, 203 F. Supp.2d 432, 458 (D. Md. 2002)(Davis, J.)(In the absence of proof of how an individual is substantially limited in performing a major life activity by his or her alleged impairment, and to what degree, it is appropriate to dismiss the claim as a matter of law).

    **2.**    **The USPS did not fail to provide Plaintiff with reasonable accommodation.**

Throughout the administrative process, and in Plaintiff's Complaints, Plaintiff claims that the USPS failed to accommodate her when her supervisors denied her requests for schedule change in January 1999. *See* Def.'s Memorandum, Exs. 2, pp. 126-128; Ex. 3, p. 4, 25-26; Ex. 4, pp. 31-33. In her Opposition to Defendant's Motion, Plaintiff ignores the fact that her requests for accommodation, i.e., the requests for schedule change, were not to accommodate an alleged disability; rather, the requested accommodation was for personal reasons only. *Id*.

To establish a *prima facie* case in a failure-to-accommodate case under the Rehabilitation Act, Plaintiff must show: (1) that she was an individual who had a disability within the meaning of the statute; (2) the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) the USPS failed to make such accommodation. *See Rhoads v. Federal Deposit Ins. Corp.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001).

In this case, Plaintiff has failed to establish that she was an individual who had a disability within the meaning of the Rehabilitation Act. *See* Def.'s Memorandum, pp. 10-14. In addition, Plaintiff failed to demonstrate that the requested accommodation, i.e. a schedule change, would have somehow permitted her to perform the essential functions of her position. The requests for schedule change were for personal reasons only, and if the USPS had granted her requests, the schedule change would not have assisted her with performing her job duties, as she was capable of performing her job duties prior to the requests.

In addition, the USPS did not fail to accommodate her by failing to provide her with work. Plaintiff's assertion that a schedule change would have provided her with more work is factually unsupported and incorrect. MDO Jackson, one of Plaintiff's supervisors, testified that in the 030 Manual Operations section, the workload fluctuated based on the flow of the mail. *See* Ex. 4, p. 30. A schedule change, therefore, would not have ensured that Plaintiff had work to do. Moreover, MDO Jackson stated that there was always work available. *Id*. at p. 63. Indeed, the "re-wrap" section and limited duty section always had work to do - whether it was repairing damaged mail or sweeping mail (pulling mail that cannot be processed by machine). *Id*. at pp. 59, 63. Other than her own self-serving and unsupported statements in her affidavit, Plaintiff has provided no evidence to support that the USPS failed to provide her with reasonable accommodation. Accordingly, Plaintiff's claim for failure to provide reasonable accommodation must be dismissed or, in the alternative, judgment entered in favor of Defendant.

    **3.**    **Plaintiff cannot establish a *prima facie* case of disability discrimination.**

To establish a *prima facie* case of disability discrimination under the Rehabilitation Act,

Plaintiff must show that she: (1) has a disability; (2) was otherwise qualified for the job; and (3) experienced an adverse employment action because of her disability. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997). In her Opposition, Plaintiff fails to establish that she had a disability or that she suffered an adverse employment action because of her disability.

As argued more fully in Defendant's Memorandum, Plaintiff is not an "individual with a disability" under the Rehabilitation Act because Plaintiff has provided no medical or other evidence to support her claim that she is a person with a disability as defined by the Rehabilitation Act. Moreover, Plaintiff cannot show that she experienced an adverse employment action. In her Opposition, Plaintiff claims that she suffered adverse employment action because "...the shift change effect in relation to a decreased level of responsibility." Pl.'s Opposition, p. 25. In addition, Plaintiff claims that she lost 40 hours of leave "...due to her supervisors unequally applying the grace period policy against her. Hence, Plaintiff sustained a monetary loss." *Id*.

The case of *Bunis v. Runyon*, 1997 WL 639241 (S.D. N.Y Oct. 16, 1997) is remarkably analogous to Plaintiff's case, despite her attempts to distinguish the case from her own. In *Bunis*, the plaintiff was a USPS employee who worked as a flexible substitute. After a work-injury, plaintiff was placed on light duty on Tour I. Plaintiff applied for a Tour II position, but was not awarded the position. The court denied her discrimination and retaliation claims, holding that the plaintiff offered no evidence to demonstrate that the denial of her requested shift change adversely affected the terms, privileges, duration or conditions of her employment. *Bunis*, at *3. The evidence showed that the plaintiff would have performed the same tasks during the Tour II day shift that she was performing during the Tour I evening shift. *Id*. In addition, the plaintiff failed to show that the

denial of her transfer had any material adverse effect on her in any way. *Id*. The court stated that "[w]hile [p]laintiff may be unhappy about the denial of her shift change request, this [c]ourt concludes that [p]laintiff's subjective feelings about the denial are not enough to transform the denial into an [adverse] employment action within the meaning of Title VII." Id. Most instructive is the court's statement that "[t]he requirement of reasonable accommodation...does not require that an employer reassign an employee to the position of her choice." *Id*. at *4 (citing *Carter v. Tisch*, 822 F.2d 465, 468 (4th Cir. 1987). Moreover, the law of reasonable accommodation does not require the USPS to grant Plaintiff's request for a shift change. *Bunis*, at *4.

Like the plaintiff in *Bunis*, Plaintiff in this case has not provided the Court with any evidence to suggest that her level of responsibility decreased as a result of her supervisors denying her requests for schedule change, and there is no evidence to show that he level of responsibility would have changed had she been on a different shift. In addition, Plaintiff stated during her deposition that the denial of her request for schedule change did not cause her to be demoted or cause her to receive less pay or benefits. *See* Def.'s Memorandum, p. 15. Now, in her "sham affidavit," Plaintiff makes unsupported assertions that contrary. *See* Pl.'s Ex. 9, ¶ 18. Nonetheless, Plaintiff provides no evidence that she was caused to receive less pay or benefits. For these reasons, as well as the reasons set forth in Defendant's memorandum, Plaintiff failed to establish a *prima facie* case of disability discrimination and, therefore, her Amended Complaint must be dismissed.

Next, Plaintiff attempts to prove that the legitimate, non-discriminatory reasons provided by Defendant were a pretext to discrimination. *See* Pl.'s Opposition, pp.26-28. Specifically, Plaintiff asserts that MDO Jackson's affidavit to the EEO investigator "flies in the face of 'sufficient

specificity.'" Pl.'s Opposition, p. 28. Plaintiff's argument, however, is flawed. Plaintiff, through her counsel, took the deposition of MDO Jackson on June 12, 2002. *See* Def.'s Memorandum, Ex. 4. During MDO Jackson's deposition, Plaintiff made inquiry as to MDO Jackson's reasons for denying Plaintiff's requests for schedule change. *Id*. at pp. 30-37. MDO Jackson explained fully the workload situation at the 030 Manual Operations section, and the reasons why requests for schedule changes were approved or denied. *Id*. and pp. 70-73. Plaintiff has not presented any evidence to suggest that MDO Jackson's explanation of why employees' requests for schedule changes were granted or denied was based any discriminatory purpose. Moreover, because Plaintiff had the opportunity to fully explore the basis of MDO Jackson's denial of Plaintiff's request for schedule change during his deposition, Plaintiff cannot argue now that MDO Jackson's reasons for denying the request for schedule change lacks "sufficient specificity."

In addition, Plaintiff attempts to prove pretext by attacking the credibility of MDO Jackson and Senior Plant Manager Incontro. Pl.'s Opposition, p. 28. Plaintiff attacks MDO Jackson for his inability to identify a slang term for a mail sorting machine, and attacks Senior Plant Manager Incontro for his inability to recall whether he received a letter from Plaintiff and whether he could have responded to the letter. *Id*. These events, however, do nothing more than show that MDO Jackson was unfamiliar with a slang term and that Incontro could not remember receiving a single piece of mail.[2]

In sum, Plaintiff failed to meet her burden of establishing that the reasons for the denial of

---

[2] Because Mr. Incontro was Senior Plant Manager at the USPS Baltimore Processing and Distribution Center and saw hundreds of pieces of mail a day, it is not unreasonable that he could not recall receiving a specific letter.

11

her requests for schedule change were a pretext to discrimination. Accordingly, Plaintiff's claim of disability discrimination fails and judgment must be entered in favor of Defendant.

### 4. Plaintiff failed to establish her claim of hostile work environment.

As stated in Defendant's Memorandum, for Plaintiff to state a claim for hostile work environment under the Rehabilitation Act, she must show that: (1) the harassment was unwelcome; (2) the harassment was based on her disability and/or her race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create ant abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See* Def.'s Memorandum, p. 17.

Plaintiff has not provided any evidence, medical or otherwise, to establish that she is disabled as defined by the Rehabilitation Act. Accordingly, Plaintiff's claim for hostile work environment under the Rehabilitation Act fails as a matter of law. *See Jones v. Department of Labor*, 2002 WL 58220, *1 (D. Md. Jan. 16, 2002)(Smalkin, J.).

Even if the Court finds that Plaintiff has a disability as defined by the Rehabilitation Act, Plaintiff cannot show that the alleged harassment was based on her disability and/or her race, or that the harassment was sufficiently severe or pervasive.

Plaintiff claims that she was harassed when she her requests for schedule change were denied and the USPS "withheld meaningful work from her...." Pl.'s Opposition, p. 30. In addition, Plaintiff claims that she was ridiculed and "subject to daily embarrassment and humiliation and was forced to stand in front of her co-workers (who were allowed to sit)." *Id*. Plaintiff's assertions, however, are unsupported by the evidence, as she has submitted no admissible evidence to support her claims.

The evidence shows that Plaintiff submitted two requests for schedule change. The first

request, submitted on the proper form (PS Form 3189), was for the period of January 18, 1998 through February 18, 1998, and was denied by MDO Jackson. *See* Def.'s Memorandum, p.4. The second request was made through a letter to Senior Plant Manager Incontro, and requested that her schedule be changed for an entire year. *Id*. Plaintiff's supervisors provided legitimate, non-discriminatory reasons for denying the requests for schedule change, and Plaintiff has not provided any admissible evidence to prove pretext.

In addition, Plaintiff claims that the she was not provided a chair in which to work in the limited duty section of the 030 Manual operations section. Pl.'s Opposition, p. 30.[3] These factual allegations should not be considered by the Court, however, as Plaintiff raised the "chair issue" in a prior EEO claim that was resolved by Plaintiff and the USPS. See Def.'s Memorandum, Ex. 2, pp. 34-38. Even if the Court accepts Plaintiff's factual allegations, Plaintiff was not without a chair everyday or the required to stand on a frequent basis. The testimony from a co-worker establishes that all employees in the limited duty section of the 030 Manual Operations were asked to give-up their chairs, not just Plaintiff. *See* Declaration of Gloria Daniels, attached hereto as Ex. 2. Plaintiff cannot show that these events were based on her disability. Plaintiff's supervisors provided legitimate, non-discriminatory reasons for denying her requests for schedule change, and Plaintiff has provided no evidence, other than her own unsupported assertions and conclusions, that she was ridiculed or humiliated.

Moreover, the alleged occurrences were not sufficiently severe or pervasive to create a

---

[3] Plaintiff relies on the affidavits from co-workers Bernetta Pride and Gloria Daniels. *See* Pl.'s Opposition, Exs. 10 and 11. As explained more fully in footnote1 above, this Court should strike and disregard the affidavits of Plaintiff's co-workers.

hostile work environment. Only two out of approximately 15 of Plaintiff's requests for schedule change were denied, and the undisputed testimony show that all employees in Plaintiff's section were required to give-up their chair occasionally. Thus, these events were not sufficiently severe or pervasive to create a hostile working environment and, therefore, her claim that she was subjected to a hostile work environment based on her disability fails.

### 5. Plaintiff cannot establish a *prima facie* case of retaliation.

Plaintiff does not specifically address her retaliation claim in her Opposition to Defendant's Motion, but she does argue that she was subjected to an adverse employment action. *See* Pl.'s Opposition, pp. 23-26.

As argued more fully above and in Defendant's Memorandum, Plaintiff did not suffer an adverse employment action. In addition, Plaintiff offered no evidence to establish a causal link between her protected activity and any alleged adverse employment action. Accordingly, Plaintiff's retaliation claim must be dismissed or, in the alternative, judgment entered in favor of the USPS.

### III. CONCLUSION

Plaintiff failed to timely file her Complaint in this action and she has not established that the doctrine of equitable tolling is applicable to her case. Even if the Court accepts all of Plaintiff's claims, Plaintiff cannot establish a *prima facie* case of disability discrimination or failure to provide reasonable accommodation under the Rehabilitation Act. In addition, Plaintiff has not provided any admissible evidence to support her hostile work environment and retaliation claims. For these reasons, as well as the reasons set forth in Defendant's Memorandum, Defendant John E. Potter, Postmaster General of the United States Postal Service, respectfully requests that Plaintiff's

Amended Complaint be dismissed or, in the alternative, judgment entered in his favor.

        Respectfully submitted,

        Thomas M. DiBiagio
        United States Attorney


By:_____/s/_____
    John W. Sippel, Jr.
    Assistant United States Attorney
    Federal Bar No. 25484
    6625 United States Courthouse
    101 West Lombard Street
    Baltimore, Maryland 21201-2692
    (410) 209-4807
    (410) 962-2310 facsimile

    Attorney for Defendant, John E. Potter,
    Postmaster General of the United States
    Postal Service


OF COUNSEL:

H. Alexander Manuel
United States Postal Service
Capital Metro Law Department
400 Virginia Avenue, S.W., Suite 650
Washington, D.C. 20024-2730