IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                    *

DELOIS EDMONDSON,              *

    Plaintiff,              *

v.                            * CIVIL ACTION NO: WDQ-02-2803

JOHN E. POTTER,               *
POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE
                                    *
    Defendant.
*    *    *    *    *    *    *    *    *    *    *    *    *    *
*

<u>MEMORANDUM OPINION</u>

Pending are a motion to dismiss, or in the alternative, for summary judgment and a motion to strike Plaintiff Delois Edmondson's pleadings filed by Defendant John E. Potter, Postmaster General, United States Postal Service ("Postmaster"). For the following reasons, the motion for summary judgment will be granted.

I  Background

Delois Edmondson joined the United States Postal Service ("Post Office") on January 19, 1974. Edmondson Depo. at 6. In 1986, Edmondson developed carpal tunnel syndrome in her wrist. *Id.* at 18-19. To accommodate this disability, the Post Office designated her to light duty service which allowed her to continue her employment. Contrary to the Postmaster's contentions, there is ample evidence that he regarded Edmondson

as a qualified individual with a disability.  Incontro Depo. at 13 (Incontro noted that Edmondson and Postmaster records indicated that she had a "rehab job" running the empower machine); *id.* at 37 (Postmaster was accommodating Edmondson for her disability by putting her in light duty service section); Jackson Depo. at 47 (Edmondson was in "light duty operations" which was reserved for persons with on-job injuries that the Postmaster was "trying to accommodate"); *Id.* at 58 (employees on light duty status are not asked to work outside their restrictions); *Id.* at 68-69 (Edmondson was assigned light duty status as an accommodation to her injury, could perform the duties that were assigned to her as a part of the accommodation, and performed those duties satisfactorily).

In December 1997, Edmondson requested a temporary adjustment to her work schedule.  *Id.* at 127-28.  The schedule changes would allow her to work on a shift with more productive work than she was given on her regular schedule.  Edmondson Aff. at ¶ 15.  The changes also would help her meet family obligations. *Id.* at ¶ 16.  Vince Jackson, the Manager of Distribution Operations, approved this and 12 subsequent temporary changes from December 29, 1997 to December 19, 1998.  Postmaster's Ex. 3 at 27-34.

In January 1999, Edmondson submitted two requests for

schedule changes; both were denied. Ex. 3 at 15; Edmondson Depo. at 120-21. In June 1999, Edmondson learned that another employee had received a scheduling change during that period and, on June 29, 1999, filed a request for EEO counseling. Postmaster's Ex. 3 at 59, 61. On August 13, 1999, Edmondson received her final interview. *Id.*[1] On June 25, 2001, an ALJ dismissed Edmondson's complaint without prejudice. Postmaster's Ex. 6.

On September 27, 2001, Edmondson filed a civil action in this Court alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Rehabilitation Act of 1973, as amended( "Rehabilitation Act"), and the Americans with Disabilities Act of 1990, as amended ("ADA"). Postmaster's Ex. 7 at 1-2; *see* 42 U.S.C. §§ 2000e, *et seq.*; 29 U.S.C. §§ 701, *et seq.*; 42 U.S.C. §§ 12101. That action was dismissed without prejudice under Fed.R.Civ.P. 4(m) because Edmondson failed to timely serve a summons and the complaint upon the defendant. Postmaster's Ex. 8. The Fourth Circuit dismissed Edmondson's interlocutory appeal. *Edmondson v. Potter, Postmaster General,* No. 02-1339 (4th Cir. July 23, 2002). She filed her second

---

[1] The final interview came by letter, which stated, "This letter serves as your final interview." Postmaster's Ex. 3 at 59.

-3-

complaint on August 22, 2002.  In its answer, the government raised the affirmative defense that the complaint was filed outside the 90 day period.  The government did not assert untimely service of the second complaint as one of its affirmative defenses.  Answer at 4-5.

II Analysis

A. Standards on Motions to Dismiss and for Summary Judgment

A Fed.R.Civ.P. 12(b)(6) motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002), *citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982).  All allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan Laboratories, Inc. v. Raj Matkari, et al.,* 7 F.3d 1130, 1134 (4th Cir. 1993). If any possible basis for relief has been pled, the Court must deny the motion to dismiss.  *Garland v. St. Louis,* 596 F.2d 784 (8th Cir. 1979), *cert. denied,* 444 U.S. 899 (1979); *Swierkiewicz*, 534 U.S. at 514.

Summary judgment may be granted when the moving party shows

that there is no genuine issue of material fact, and it is legally entitled to judgment. *See Kitchen v. Upshaw,* 286 F.3d 179, 182 (4th Cir. 2002), *citing* Fed.R.Civ.P. 56(c). The moving party's initial burden depends on whether it would bear the burden of proof at trial. If it would not, its initial burden is met by "pointing out" that the non-moving party has not made a sufficient showing on an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). If the moving party would bear the burden of proof at trial, it satisfies its initial burden by producing evidence upon which a reasonable jury could return a favorable verdict. *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 614 n. 10 (4th Cir. 1999).

After the initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. *Celotex,* 477 U.S. at 323-25*, citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)*; Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002), *citing Anderson,* 477 U.S. at 255.

B.  Timeliness Issues

1. Timeliness of Original Complaint

Title VII claims must be filed within 90 days of the receipt

of notice of final EEOC or agency action.    The Postmaster argues the first complaint was untimely, and that untimeliness also bars the second complaint.    Postmaster's Brief at 7; Postmaster's Brief Ex. 7. ¶ 10; 42 U.S.C. § 2000e-5(f)(1)(90 day requirement); 42 U.S.C. § 2000e-16 (c) (applicable to federal agencies); *Watts-Means v. Prince George's County Crisis Ctr.,* 7 F.3d 40, 42 (4ᵗʰ Cir. 1993).    The 90 day time period does not begin to run until: 1) the EEOC takes final action; and 2) the aggrieved party receives proper notice of that action.    *Ebbert v. DaimlerChrysler Corp.,* 319 F.3d 103, 108 (3d Cir. 2003); *see also* 29 C.F.R. § 1601.28 (b)(requiring right to sue letter upon disposition of charge); 29 C.F.R. § 1601.28 (e)(delineating contents of right to sue letter).[2]    Proper notice includes a reference to the length of the 90 day period and the event that will trigger it.    *Id.* at 116-17.

The Postmaster argues that the June 25, 2001 letter provided Edmondson with notice to file her claim.    Postmaster's Ex. 7, ¶ 10; Postmaster's Brief at 8.    Edmondson filed her first complaint on September 27, 2001, 91 days after her receipt of the June 25 letter.    Postmaster's Ex. 7.    Accordingly, if the

---

[2] Under 29 C.F.R. 1601.28(e) a right to sue letter must contain, *inter alia*, "Authorization to the aggrieved person to bring a civil action under Title VII . . . within 90 days from receipt of such authorization . . . ."

June 25 letter was proper notice under 42 U.S.C. § 2000e-5(f)(1), the first complaint was untimely filed.

The June 25 letter reads:

"ORDER OF DISMISSAL

Per Complainant's request dated May 31ˢᵗ, 2001, Complainant has withdrawn his [sic] request for a hearing in order to attempt mediation.

This matter is hereby DISMISSED WITHOUT PREJUDICE. Complainant reserves [text crossed out on original] the right to file an appeal to U.S. District Court if the case is not resolved."

Postmaster's Ex. 6.[3]

This letter neither mentions the 90 day notice period nor identifies the event that would cause it to run. 42 U.S.C. § 2000e-5(f)(1); see Ebbert, 319 F.3d at 108, 116-17; 29 C.F.R. § 1601.28(e); 29 C.F.R. § 1614.110.[4] Furthermore, the letter is ambiguous as to whether an action could be filed upon its

---

[3] The final sentence, if read with the crossed out text, states, "[c]omplainant reserves the right to receive a Final Agency Decision and the right to file an appeal to U.S. District Court if the case is not resolved." Postmaster's Ex. 6.

[4] In its brief, the Postmaster contends that the June 25 letter constituted final action by the EEOC rather than the agency. Postmaster's Brief at 11. The government's contention appears to be correct. The letter is signed "For the Commission," originates from an EEOC office in Baltimore, is stamped received by the Post Office's EEO office, and alludes to a right to appeal to the United States District Court. Postmaster's Ex. 6.

receipt or only after mediation had failed.  Postmaster's Ex. 6.


     The notice requirement may be satisfied through either actual or constructive notice.  *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001), *cert. denied,* 535 U.S. 970 (2002).  The Postmaster has submitted evidence that Edmondson was told about the 90 day filing period around the time of the June 25 letter and had received a previous letter which instructed her about the proper procedures, including the 90 day time period which began upon final action.  Edmondson Depo. at 64;  Reply Ex. 1 at 2-3 (September 13, 1999 EEO letter).

     Even if Edmondson knew about the 90 day period, the June 25, 2001 letter did not inform her when that period began. Postmaster's Ex. 6.  Edmondson interpreted the letter as holding out the possibility of further agency action.  Edmondson Affidavit at 7.  Because the letter did not clearly notify Edmondson that it started the 90 day limitations period, and there is no evidence that she actually knew it would, the receipt of the letter did not begin the 90 day period.  *Ebbert,* 319 F.3d at 107-08, 116-17 (reversing summary judgment when plaintiff had actual knowledge of 90 day period but was not properly noticed, and did not otherwise know, that conversation

-8-

with EEOC official triggered period).

    2.   Timeliness of the Amended Complaint

When Edmondson filed her initial complaint, on September 27, 2001, she identified the June 25, 2001 letter as her "right to sue letter." Postmaster's Ex. 7, ¶ 10. Accordingly, by this date Edmondson understood that no further agency action was forthcoming, and the 90 day period had been triggered. *See id.* This complaint was filed on August 22, 2002, well beyond 90 days from June 25, 2001.

The Fourth Circuit dismissed Edmondson's appeal as interlocutory under *Domino Sugar Corp.,* 10 F.3d 1064, 1066-67 (4th Cir. 1993). *Edmondson v. Potter,* No. 02-1339 (4th Cir. July 23, 2002), *available at* 2002 U.S. App. LEXIS 14789("Because Edmondson may refile this action and perfect service of process, her appeal is interlocutory and not subject to appellate review . . .."). *Domino Sugar* held that when "the plaintiff [can] save his action by merely *amending* his complaint . . . [and] continue the litigation in the district court, we believe the plaintiff should not be allowed to appeal the dismissal without prejudice." *Id.* [emphasis added]; *see also Ruby v. Secretary of the United States Navy,* 365 F.2d 385, 387 (9th Cir. 1966)("an order which dismisses a complaint without expressly dismissing the action is [generally] not . . . an appealable order"). The

government seeks dismissal on the basis that the 90 day limitations period was not tolled by a dismissal without prejudice. *Brown v. Hartshorne Public School District,* 926 F.2d 959, 961 (10th Cir. 1991)("[t]he filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII").

Unlike final judgments, which may be modified under Fed.R.Civ.P. 60, the Court retains the power to modify an interlocutory judgment or order at any time prior to final judgment. *Greene v. Union Mut. Life Ins. Co. of America,* 764 F.2d 19, 22 (1st Cir. 1985)(absent final judgment, requests for reconsideration of dismissed claims are akin to motions for reconsideration, which appeal to "the inherent powers of the rendering district court to afford such relief from interlocutory judgments . . . as justice requires"). Based on the interlocutory nature of the dismissal of her first complaint, the Court will treat the August 22, 2002 filing as a request to reopen Case No. WDQ-01-2887; the Court will reopen that case. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1472 (4th Cir. 1991)(upon appellate finding that earlier order is not final judgment, order must be interlocutory and subject to review by the district court, on motion or *sua sponte,* any time prior to final judgment); *see also Moses H.*

*Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 12 (1983)(". . . [E]very order short of a final decree is subject to reopening at the discretion of the district judge").[5] Case No. WDQ-02-2803 will be consolidated with Case No. WDQ-01-2887 into this single action.  *Id.;* Fed.R.Civ.P. 42(a).

The government, which has relied solely upon the 90 day limitations period rather than defective service, has waived objection to proper service in this action.  *Pusey v. Dallas Corp.,* 938 F.2d 498, 500 (4th Cir. 1991).[6]  The allegations in the amended complaint relate back to the first complaint and, therefore, are within the 90 day limitations period.  *See, e.g., Gordon v. Green,* 602 F.2d 743, 746-47 (5th Cir. 1979). Accordingly, finding no procedural defects in this case, the Court will address the Postmaster's motion for summary judgment on the merits of the claims.

C.  Substantive Claims

1.  Rehabilitation Act Claim

Though Edmondson has brought both Rehabilitation Act and ADA

---

[5] Review of non-final orders is not subject to the restrictive provisions of Fed.R.Civ.P. 60(b).  *Fayetteville Investors,* 936 F.2d at 1472.

[6] By re-opening the first case, rather than finding the 90 day period waived in the second case, the Court seeks to preserve appellate review of the issues raised in the first complaint as well as the second.

claims against the Postmaster, the ADA does not apply to federal
employees. *Henrickson v. Potter,* 327 F.3d 444, 447 (5th Cir.
2003), *reh'g denied,* 2003 U.S. App. LEXIS 15376 (5th Cir. June
24, 2003); *Rivera v. Heyman,* 157 F.3d 101, 103 (2d Cir. 1998).
The Court applies ADA standards to a federal employee's
Rehabilitation Act claim. *See Hooven-Lewis v. Caldera,* 249 F.3d
259, 268 (4th Cir. 2001)(Rehabilitation Act Claims controlled by
same standards used in ADA claims). Therefore, Edmondson must
prove that she was a qualified individual with a disability and
that the Postmaster discriminated against her because of the
disability. *Id.*[7] Absent direct evidence of discrimination,
Edmondson may make such a showing through the flexible burden
shifting approach first enunciated in *McDonnell Douglas Corp. v.
Green,* 411 U.S. 792 (1973). *Halperin v. Abacus Tech. Corp.,* 128
F.3d 191, 197 (4th Cir. 1997). Edmondson must first demonstrate
a *prima facie* case of discrimination under the Rehabilitation
Act, which requires proof that the plaintiff: 1) has a
disability; 2) is otherwise qualified for the job in question;

---

[7] Because both parties repeatedly references evidence
relating to the merits of Edmondson's claims, the defendant's
motion will be treated as one for summary judgment. *See,
e.g.,* Postmaster's Brief at 11-12 ("Based on her testimony,
Plaintiff cannot show that her medical condition, i.e. CTS,
substantially limited one or more of her life activities");
Opp. at 21.

and 3) suffered an adverse employment action solely because of the disability. *Id.*

As an initial matter, there is no evidence that the denials of temporary schedule changes were adverse employment actions. Although Edmondson asserts that the denials left her with less productive work than she would have had on other shifts, there is no evidence that the changes damaged her future career prospects. *Brown v. Lester E. Cox Medical Centers,* 286 F.3d 1040, 1045-46 (8th Cir. 2001)(transfer was an adverse employment action when it prevented nurse from using her skills and damaged her "future career prospects"); *Boone v. Goldin,* 178 F.3d 253, 255-56 (4th Cir. 1999)(adverse employment actions typically involve "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion"). Though Edmondson was dissatisfied with the assignments she received without the scheduling modification, there is no indication that the work assignments precluded her from using her skills and talents. *See Brown,* 286 F.3d at 1046 (plaintiff's reassignment prevented her from using her nursing skills). Accordingly, the Postmaster's refusal to grant Edmondson a modified schedule did

not constitute an adverse employment action.  *Id.*[8]

The adverse impact on Edmondson's leave does not alter this result.  Edmondson Affidavit at ¶ 17. (denials of the "grace period" caused her to use leave).  The enforcement of leave policies, even if unevenly aimed at a particular individual, generally does not constitute an adverse employment action.  *Von Gunten v. State of Maryland,* 243 F.3d 858, 869 (4th Cir. 2001).  Furthermore, although the Rehabilitation Act may require accommodation in the form of reassignment to a funded, vacant position in the same commuting area and of the same pay grade, the plaintiff must demonstrate that such a position was available and a transfer was requested.  *Shiring v. Runyon,* 90 F.3d 827, 832 (3d Cir. 1996).  Therefore, Edmondson's claim also fails because she has not identified a vacant position on the later shift that she could have filled.  *Id.*

Finally, Edmondson's claim fails because she has not identified a similarly situated employee who was granted a temporary scheduling change under circumstances similar to

---

[8] This analysis is not altered by Edmondson's testimony that the reassignment caused her to lose her status with other supervisors and workers.  *Brown,* 286 F.3d at 1046 ("To be 'adverse,' an employment action must do more than merely make an employee unhappy . . .").  Any such loss was not pecuniary and did not threaten Edmondson's career or aspirations.  *Id.*

Edmondson's. *Cook v. CSX Transportation Corp.,* 988 F.2d 507, 511 (4th Cir. 1993)(inference of discrimination does not arise unless employees who were not subject to allegedly discriminatory act are similarly situated to plaintiff). Edward Jackson, Edmondson's supervisor, testified, without contradiction, that Edmondson "constantly" requested scheduling changes and that such requests constituted an abuse of the system. Jackson Depo. at 70, 72-73. Accordingly, Edmondson's claim also fails because she has not offered evidence that another employee who was granted a scheduling change had requested a comparable number of temporary changes. *Cook,* 988 F.2d at 511.

2. Hostile Environment Claim Under the Rehabilitation Act

To prevail on a hostile environment claim under the Rehabilitation Act, Edmondson must prove that she: 1) is a qualified individual with a disability; 2) was subject to unwelcome harassment; 3) the harassment was based on her disability; 4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and 5) some factual basis for imputing liability to the employer. *Fox v. GMC,* 247 F.3d 169, 177 (4th Cir. 2001). The Postmaster argues that none of the events forming the basis of the hostile environment was severe enough to alter the terms,

conditions, or privileges of Edmondson's employment. Postmaster's Brief at 19. Edmondson counters that her light duty work, and lack of a chair, fostered an atmosphere of resentment and pity for her among her co-workers. Opp. at 29-31, *citing Rohan v. Networks Presentation LLC,* 192 F.Supp.2d 434 (D. Md. 2002).

The objective and subjective severity of the conduct underlying hostile environment claims must be considered in light of all of the relevant circumstances. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993). This inquiry may consider factors including the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a merely offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.*

Edmondson, who admitted to being habitually late for work, testified that her arrival times were closely scrutinized and she was docked for being as little as a half a minute late. *Id.* at 79. All of the chairs had usually filled up by the time she arrived at work and, as a result, Edmondson was required to work from the break area until a chair became available. Edmondson Depo. at 77-78. Edmondson also complained that her assigned seat was, at times, cold, but she does not state whether the scheduling change would have produced a warmer working

environment.  *Id.* at 80.  Edmondson argued that her supervisors and co-workers resented her light duty schedule and that she felt that her skills were underutilized.  Opp. at 18-19, 30; Edmondson Depo. at 78-80.

Although Edmondson never felt threatened, her uncertainty about her work assignments made her fell "sick" on a daily basis.  *Id.* at 99.  Edmondson testified that the stress and strain of her working conditions created physical problems such as hair loss.  *Id.*  There is no indication, however, that this uncertainty  interfered with the performance of Edmondson's assignments; she complains that the assignments themselves were a waste of her time.  Opp. at 22.

Edmondson's symptoms are evidence that she subjectively perceived her environment as hostile.  *Conner v. Schrader-Bridgeport Int'l, Inc.,* 227 F.3d 179, 199-200 (4th Cir. 2000). However, there is no evidence that the conduct at issue, when viewed objectively, created an environment that was anything more than unpleasant.  *Hopkins v. Baltimore Gas and Electric Co.,* 77 F.3d 745, 753 (4th Cir. 1996)(hostile environment are not implicated by a "merely unpleasant working environment," but rather one that is "hostile or deeply repugnant").  That Edmondson's light duty created "predictable tension" between her and others does not create an actionable hostile environment

-17-

claim.  *Von Gunten v. Maryland,* 243 F.3d 858, 870 (4th Cir. 2001).  Accordingly, because there is no evidence that the conduct involved was objectively severe enough to alter the terms and conditions of Edmondson's employment, summary judgment must be granted to the Postmaster.

3. Retaliation Claim

Retaliation claims may be brought for the first time in federal court.  *Nealon v. Stone,* 958 F.2d 584, 587, 589-90 (4th Cir. 1992)(when EEOC complaint alleged Equal Pay Act and Title VII wage discrimination, claim that plaintiff was retaliated against for filing EEOC complaint could be raised in federal court for the first time); *see also Obi v. Anne Arundel County,* 142 F. Supp. 2d 655, 672 (D. Md. 2001), *aff'd,* 28 Fed. Appx. 333 (4th Cir. 2002)(same).  With respect to her retaliation claim, Edmondson must prove that: 1) she engaged in protected activity, such a filing an EEO complaint; 2) the employer took adverse employment action against her; and 3) a causal connection existed between the protected activity and the adverse action.  *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir. 1994).

In her affidavit, Edmondson testified that two acts of retaliation occurred.  Edmondson Affidavit at ¶¶ 20-21.  The first incident occurred on May 26, 1999, between the filing of her third EEO Complaint on March 12, 1999 and her fifth EEO

complaint (the basis of this action) in June 1999. Edmondson
Affidavit at ¶¶ 20-21. The second incident occurred on May 26,
2000, well after the filing of the fifth EEO complaint. *Id*.
Assuming both incidents are cognizable under *Nealon*, Edmondson's
retaliation claim nevertheless fails.

Retaliation claims are only available when the plaintiff
protests unlawful discrimination in good faith, with a
"reasonable belief that a violation existed." *Aman v. Cort
Furniture Retail Corp.,* 85 F.3d 1074, 1085 (3d Cir. 1996).[9]
Edmondson has not offered any evidence that her belief that she
was being discriminated against was reasonable. *Evans v. The
Kansas City, Missouri School District,* 65 F.3d 98, 100-01 (8th
Cir. 1995)(burden of demonstrating reasonable belief on
plaintiff). The evidence indicates that she was an habitually
late employee who worked a light duty assignment designed
specifically to accommodate her disability. Edmondson Depo. at
77-80; Incontro Depo. at 37 (Edmondson was being accommodated
for her disability through her assignment to light duty
section).

There is no evidence that any of the supervisors who

---

[9] Opposition to activities that are not protected by
federal law cannot form the basis of a retaliation claim.
*Balazs v. Liebenthal,* 32 F.3d 151, 158-59 (4th Cir. 1994).

allegedly retaliated against her knew that Edmondson had filed an EEO complaint.  *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998)(*prima facie* case of retaliation requires that the employer knew of plaintiff's protected activity).  Accordingly, there is no evidence that retaliatory animus motivated the two incidents.  *Id.*

Finally, Edmondson has offered no evidence that employees not engaged in protected activity were punished less severely for similar infractions.  *Cook v. CSX Transportation Corp.,* 988 F.2d 507, 511 (4th Cir. 1993).  Accordingly, summary judgment is appropriate on Edmondson's retaliation claims.  *Id.*

### 4.  Title VII Claim

In a footnote in her Opposition Brief, Edmondson withdrew all of her racial discrimination claims.  Opp. at 33, note 1.  Accordingly, summary judgment on those claims is appropriate.

### III. Conclusion

Edmondson's failure to provide evidence on essential elements of her various claims requires summary judgment for the Postmaster.


 March 11, 2004                    _____ /s/ _____

Date                              William D. Quarles, Jr.
                              United States District Judge